

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00136-CR

_____

JONATHAN GILL, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from County Criminal Court No. 3
Denton County, Texas
Trial Court No. CR-2021-00148-C

---

Before Kerr, Birdwell, and Wallach, JJ.
Memorandum Opinion by Justice Wallach

# MEMORANDUM OPINION

Appellant Jonathan Gill appeals his conviction for driving while intoxicated because it is not supported by legally sufficient evidence. For the reasons set forth below, we affirm.

## Background

On January 5, 2020, at approximately 1:34 a.m., Officer Brooke Taylor pulled Gill over for failure to dim his bright lights as he drove toward her. Upon initiating the traffic stop, Officer Taylor noticed that Gill smelled of alcohol, had red and glossy eyes, and slurred his speech. Gill admitted to consuming four beers and an additional shot while at Walter's Tavern, a local bar not far from where Officer Taylor pulled him over. Based upon her observations and Gill's admission that he had been drinking, Officer Taylor began an investigation for driving while intoxicated and administered three standardized field sobriety tests, including the horizontal gaze nystagmus test, the "walk-and-turn" test, and the "one-legged stand" test. Gill failed all three tests. As a result, Officer Taylor, finding that Gill had lost the normal use of his mental and physical faculties due to the introduction of alcohol, placed him under arrest.

Upon initiating the arrest, Officer Taylor read Gill the statutory warning. She then requested and received Gill's consent to draw his blood for alcohol testing. The lab test of Gill's blood sample revealed a blood alcohol concentration of 0.193.

The State presented three witnesses at trial: Officer Taylor, Officer Bradford Nelson, who had served as the backup officer during Officer Taylor's investigation, and Tempest Brooks, the chemist who tested Gill's blood sample. Officer Taylor testified regarding the basis for her determination that Gill was intoxicated, including his failure of all three standard field sobriety tests she administered. Officer Nelson testified that he, like Officer Taylor, noticed several signs that Gill was intoxicated, including lack of balance and inability to focus. Brooks confirmed that she had tested Gill's blood sample using headspace gas chromatography and found a blood alcohol concentration of 0.193.

After the State rested, Gill presented four witnesses of his own: Andrew Walter, a bartender at Walter's Tavern, Michelle Dando and her mother Linda Schoch, who spent time with Gill at the tavern on the night of his arrest, and, finally, Gill himself. Walter testified that he did not notice any signs that Gill was intoxicated but that he did not watch him all night long. Dando and Schoch both testified to seeing Gill at Walter's Tavern. Each stated that she did not witness Gill drink an alcoholic beverage during the time they were with him, which was roughly between 8:45 p.m. and 10:30 p.m. Neither observed any sign that Gill was intoxicated. Lastly, Gill testified that he arrived at the tavern around 4:15 p.m. and only consumed three drinks that evening, despite having told Officer Taylor that he had consumed four

3

beers and a shot.[1] Gill attributed his abnormal behavior to having the flu. He stated his belief that he was not intoxicated on the night in question and that the blood test results were inaccurate.

At the conclusion of evidence, the jury found Gill guilty of driving while intoxicated with a blood alcohol concentration of 0.15 or higher. The trial court sentenced Gill to 365 days in jail, probated for 12 months, and a $500 fine. Gill now appeals.

## Discussion

In his sole issue, Gill argues that the evidence presented at trial was insufficient to support his conviction for driving while intoxicated. Specifically, Gill asserts that he effectively "negated" all of the State's inculpatory evidence and that no rational factfinder would find him guilty based upon the evidence presented at trial.

### I. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable

---

[1]Gill explained that the "shot" he mentioned to Officer Taylor had been an allergy shot, not a shot of alcohol.

inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

## II. Evaluating the Sufficiency of the Evidence in This Case

In this case, the jury convicted Gill of the Class A misdemeanor offense of driving while intoxicated with an alcohol concentration of 0.15 or more.[2] In order to support this verdict, the jury had to find the following elements beyond a reasonable

---

[2]Ordinarily, driving while intoxicated is a Class B misdemeanor. However, the Texas Penal Code provides that the offense shall be upgraded to a Class A misdemeanor if the defendant is shown to have had an alcohol concentration of 0.15 or higher. Tex. Penal Code Ann. § 49.04(b), (d).

doubt: that on January 5, 2020, Gill (1) operated a motor vehicle; (2) in a public place; (3) while intoxicated;[3] (4) with an alcohol concentration level of 0.15 or more as determined by a blood, breath, or urine test. *Id.* § 49.04(a), (d). In his testimony, Gill admitted that he was driving a vehicle on a public roadway and, therefore, only contests the sufficiency of the intoxication and blood alcohol concentration elements.

At trial, the State presented a great deal of evidence demonstrating that Gill was intoxicated. Officer Taylor testified at length regarding the signs of intoxication that she observed after initiating the traffic stop, including Gill's heavily slurred speech, glossy and red eyes, and the strong odor of alcohol on his breath. She also testified that Gill admitted to her that he had consumed alcohol. Officer Taylor described in detail how Gill failed all three field sobriety tests that she administered and how he had great difficulty understanding the simple instructions for the "walk-and-turn" test. Based on these observations and tests, Officer Taylor confidently testified that she determined "[w]ithout a doubt in [her] mind" that Gill was intoxicated at the time she pulled him over. Officer Taylor's assessment was corroborated by Officer Nelson, the

---

[3]The Texas Penal Code defines "intoxicated" as

   (A)   not having the normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more substances, or any other substance into the body; or

   (B)   having an alcohol concentration of 0.08 or more.

   Tex. Penal Code Ann. § 49.01(2).

backup officer during Gill's arrest, who testified that he also observed signs that Gill was intoxicated, including a lack of balance and an inability to focus.

In addition to the testimony of the police officers, the State introduced evidence from Brooks, a forensic analyst for the Texas Department of Public Safety, who analyzed Gill's blood sample. Brooks testified regarding her education, training in toxicology, her lab's accreditation, the methodology of testing blood samples, and how she tested Gill's blood specimen to determine its blood alcohol concentration, including the protocols she followed both prior to and during testing of the sample to ensure the accuracy of the results. Brooks recognized her signature on the vial of Gill's blood, which confirmed that she tested the blood in that vial. Based on the results of her analysis of Gill's sample, Brooks concluded with 99.7% certainty that Gill had a blood alcohol concentration of between 0.184 and 0.202, the average of which is 0.193.

Viewed in the light most favorable to the verdict, the evidence is sufficient to support Gill's conviction. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622. While Gill presented evidence conflicting with the police officers' determination that he was intoxicated, this is not sufficient to satisfy his burden on appeal. The jury, as the trier of fact, heard the testimony of both the State's and Gill's witnesses and weighed their credibility. *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury was free to accept or reject any or all evidence on either side. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Though Gill

presented evidence purporting to contradict that presented by the State, the jury's determination that Gill was intoxicated was not irrational. *See McFadden v. State*, 541 S.W.3d 277, 284 (Tex. App.—Texarkana 2018, pet. ref'd) ("A jury's ultimate conclusion must be rational in light of all the evidence."). While the bartender Walter testified that he did not notice any "red flags" of intoxication from Gill on the night in question, he also admitted that he was not watching Gill all night long. Though Dando and Schoch likewise testified that they did not observe any signs that Gill was intoxicated while they were with him that night, Gill was already at the bar before they arrived and remained there after they left; thus, they cannot account for Gill's alcohol intake or level of intoxication for the entire night. Gill's own testimony that he had only three drinks that evening conflicts with his previous statements to Officer Taylor that he had consumed four beers and a shot.[4] Although Gill attributed his abnormal behavior and appearance that night to the flu, the jury, as the finder of fact, was free to reject that explanation. *See Lancon v. State,* 253 S.W.3d 699, 707 (Tex. Crim. App. 2008). Thus, even setting aside the blood test results, which, as discussed below, Gill's evidence failed to controvert in any meaningful way, Gill did not "negate" all of the State's inculpatory evidence, and, based on the evidence presented, a reasonable factfinder could have found that he was intoxicated. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789.

---

[4]As noted above, Gill explained at trial that the "shot" he mentioned to Officer Taylor was actually an allergy shot, not a shot of alcohol.

Significantly, Gill presented no evidence challenging or questioning the methodology Brooks utilized or the procedures she followed to test Gill's blood sample.[5] Rather, the only evidence contradicting Brooks' determination that Gill had a blood alcohol concentration of 0.193 was Gill's naked, unsubstantiated assertion that he did not believe that the test results were accurate. Gill presented no evidence that would call the accuracy of the test results into question and, therefore, raised no meaningful challenge to them. These test results, taken together with the police officers' testimony, are sufficient to support the jury's verdict.

Because a rational factfinder, having considered the evidence presented at trial, could have found beyond a reasonable doubt that Gill was intoxicated with a blood alcohol concentration of 0.15 or higher, we overrule Gill's sole issue. *See Jackson*, 443 U.S. at 320, 99 S. Ct. at 2789.

## Conclusion

Having overruled Gill's sole issue, we affirm the trial court's judgment.

---

[5]At trial, Gill stipulated that the blood specimen was drawn by a qualified technician pursuant to standard medical procedures, in a clean and sanitary place, with the chain of custody intact. Thus, Gill also did not dispute that the blood sample was his and was taken properly.

9

/s/ Mike Wallach
Mike Wallach
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 18, 2022